## Rush v. Commonwealth.

(Decided December 16, 1924.)

### Appeal from Cumberland Circuit Court.

1. Intoxicating Liquors—Carrying Liquor in One's Stomach Held Not Transportation Within Prohibition Act.—Carrying liquor in one's stomach held not transportation within prohibition act.

2. Intoxcating Liquors—Verdict of Guilty of Transporting Liquor Held Flagrantly Against Evidence.—Verdict of guilty of transporting liquor held flagrantly against the evidence.

W. TANNER OTTLEY for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

A jury found John Rush guilty of transporting intoxicating liquor, and he appeals from the judgment fix-

ing his punishment at a fine of $100.00 and thirty days in jail.

The evidence for the Commonwealth is, in substance, as follows: One day in the month of January, 1924, appellant, who had been badly shot, came to the home of Mrs. Ella Mae Huddleston, and, after telling her that he had been shot, asked her to fix a bed for him and call the doctor. She complied with the request, and appellant lay down. When she afterwards entered the room, she found on the floor at the bedside a pint bottle containing a clear, white liquid about two inches deep. She did not touch or smell the bottle, and did not know what it contained. The bottle disappeared when appellant left. While appellant was there, he threw up, and the vomit smelled like liquor. Kate Melton, who was present when appellant arrived at the Huddleston home, says that appellant's vomit smelled like whiskey. She also saw the bottle, but was not close enough to tell whether there was anything in it or not. Wyman Huddleston took the pistol and the bottle out of appellant's pocket and laid them on the floor. The liquid was about one and one-half inches or two inches deep.

On the other hand, appellant says that he left home with the bottle for the purpose of getting some liquor, but did not succeed in finding any. After he was shot, he became very thirsty and stopped at the creek to get a drink, and at the same time put some water in the bottle. He was suffering a great deal, and vomited several times. He had drunk some California beer that morning before he left home, and that may have accounted for the smell of the vomit. After leaving the Huddleston home, he took a drink out of the bottle, and William Davidson poured the rest of it out. Dr. Bow, who dressed appellant's wounds, says that appellant was shot in his left hip, and the shock would naturally create a thirst for water. While there, appellant threw up two or three times, and he did not detect the odor of whiskey. Wm. Davidson, who carried appellant home, says that appellant vomited while he was there, but he did not smell the odor of whiskey. After leaving, appellant called for a drink, and witness told him he would have to go down to Ira Davis' and get some water. Appellant replied that there was some in the bottle, and drank some of it. After appellant drank, witness poured out the remainder. When he did so, some of the liquid got on his hands, and

he smelled it, and it did not smell like whiskey, but was water.   John Carter, who arrived on the scene about the same time as Dr. Bow, says that appellant threw up while he was there, and he carried out the pan, and the vomit did not smell like liquor.

The charge was the illegal transportation of intoxicating liquor.   Carrying liquor in one's stomach is not transportation within the meaning of the prohibition act. Therefore, to sustain the charge, it was necessary for the Commonwealth to prove beyond a reasonable doubt that the bottle which appellant carried contained intoxicating liquor.   None of the witnesses for the Commonwealth smelled, tasted, or examined the contents of the bottle, and all of them stated that they did not know what the bottle contained.   The only evidence relied on is that the witnesses detected the odor of whiskey when appellant threw up.   This was sufficient to show that appellant had taken a drink of intoxicating liquor, but it is extremely doubtful whether it was sufficient to justify the inference that the drink which he had taken came from the bottle which he had carried, and that, therefore, the bottle contained intoxicating liquor.   However this may be, there is no escape from the conclusion that the probative effect of the evidence, even though sufficient to take the case to the jury, was completely overcome by the positive evidence as to the contents of the bottle.   We, therefore, conclude that the verdict is flagrantly against the evidence.

Judgment reversed and cause remanded for a new trial consistent with this opinion.